UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEBORAH D.,

                      Plaintiff,

      v.

KILOLO KIJAKAZI,[1] Commissioner of
  Social Security,

                      Defendant.
_____

**DECISION
and
ORDER**

**18-CV-4931F**
(**consent**)

APPEARANCES:        LAW OFFICES OF KENNETH R. HILLER, PLLC
                            Attorneys for Plaintiff
                            KENNETH R. HILLER, of Counsel
                            6000 North Bailey Avenue
                            Suite 1A
                            Amherst, New York  14226
                                and
                            MELISSA MARIE KUBIAK, of Counsel
                            1200 Scottsville Road
                            Building C
                            Suite 181
                            Rochester, New York  14624

                            TRINI E. ROSS
                            UNITED STATES ATTORNEY
                            Attorney for Defendant
                            Federal Centre
                            138 Delaware Avenue
                            Buffalo, New York  14202
                                and
                            BRITTANY JOHANNA GIGLIOTTI,
                            PADMA GHATAGE
                            Special Assistant United States Attorneys, of Counsel
                            Social Security Administration
                            Office of Program Litigation
                            Office of the General Counsel
                            6401 Security Boulevard
                            Baltimore, Maryland  21235

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

**JURISDICTION**

On October 3, 2022, the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned in accordance with this court's June 29, 2018 Standing Order (Dkt. 10).  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on November 8, 2021 (Dkt. 7), and by Defendant on December 20, 2021 (Dkt. 8).

**BACKGROUND**

Plaintiff Deborah D. ("Plaintiff"), brings this action under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application ("application") filed with the Social Security Administration ("SSA"), on October 6, 2017, for Social Security Supplemental Income ("SSI") under Title XVI of the Act ("disability benefits").  Plaintiff alleges she became disabled on May 15, 2015, based on anxiety, depression, and stress.  AR[2] at 200, 204.  Plaintiff's application initially was denied on May 4, 2018, AR at 85-90, and at Plaintiff's timely request, AR at 91-92, on December 19, 2019, a hearing was held via teleconference before administrative law judge Eric Eklund ("the ALJ").  AR at 40-71 ("administrative hearing").  Appearing and testifying at the administrative hearing were Plaintiff who testified with the assistance of a Spanish interpreter, and who was represented by Brian P. Kujawa, a non-attorney representative, and vocational expert ("VE") Joseph Goodman ("the VE").

---

[2] References to "AR" are to the page of the Administrative Record electronically filed by Defendant on June 10, 2021, in eight parts (Dkt. 6 through 6-7).

On January 29, 2020, the ALJ issued a decision denying Plaintiff's claim, AR at 7-29 ("ALJ's Decision"), which Plaintiff timely appealed to the Appeals Council. AR at 188-89. On November 10, 2020, the Appeals Council issued a decision denying Plaintiff's request for review, rendering the ALJ's Decision the Commissioner's final decision on the claim. AR at 1-6. On January 8, 2021, Plaintiff commenced this action seeking judicial review of the ALJ's Decision.

On November 8, 2021, Plaintiff moved for judgment on the pleadings (Dkt. 7) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 7-1) ("Plaintiff's Memorandum"). On December 20, 2021, Defendant moved for judgment on the pleadings (Dkt. 8) ("Defendant's Motion"), attaching the Commissioner's Memorandum in Support of Her Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief, Pursuant to Local Rule 5.5 (Dkt. 8-1) ("Defendant's Memorandum"). Filed on January 31, 2022 was Plaintiff's Reply Brief (Dkt. 9) ("Plaintiff's Reply"). Oral argument was deemed unnecessary.

Based on the foregoing, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

## **FACTS**[3]

Plaintiff Deborah D. ("Plaintiff"), born February 1, 1986, was 29 years old as of May 15, 2015, her alleged disability onset date ("DOD"), and 33 years old as of January 29, 2020, the date of the ALJ's decision. AR at 23, 200, 204. As of the administrative hearing, Plaintiff was married and lived in an apartment with her husband and two

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

3

children ages 8 and 15.[4]  AR at 45-46, 210.  Plaintiff's husband did the cooking and most of the cleaning and took Plaintiff shopping, and the older children helped with cleaning and child care.  AR at 549-50.

Plaintiff attended school in Puerto Rico until ninth grade, has not obtained a GED and, despite taking classes in English, is not fluent in English, but was trained as a nail technician.[5]  AR at 46-47, 48-49, 206, 231.  Plaintiff reads and performs math at the fourth-grade level.  AR at 551-52.  Plaintiff has a driver's license but does not drive and relies on her husband for rides.  AR at 47-48, 213.  Plaintiff has no past work experience, AR at 205, 358, a fact Plaintiff attributes to her dislike of people, AR at 217, and mental health reasons.  AR at 358.

It is undisputed that Plaintiff has been treated for low back pain since September 2015, AR at 285, and mental health since 2016.  AR at 358.  Between 2015 and 2017, while living in Rome, New York, Plaintiff received primary care at Delta Medical Clinic, Rome Memorial Hospital, and attended physical therapy at Chestnut Commons Physical Therapy Rehabilitation Center.  AR at 265-347.  By October 5, 2015, Plaintiff had relocated to Buffalo, New York where she established primary care at Neighborhood Health Center with primary care physician Jon Kucera, M.D. ("Dr. Kucera").  AR at 378-406, 426-443.  In connection with her disability benefits application, on February 2, 2018, Plaintiff underwent on a consultative basis a psychiatric evaluation by David Schaich, Psy.D. ("Dr. Schaich"), AR at 358-62, and an internal medicine examination by John Schwab, D.O. ("Dr. Schwab"), AR at 365-68.

---

[4] An older child also lived with Plaintiff when she filed her application for disability benefits, AR at 358, 365, but not as of the administrative hearing.  AR at 45-46, 210.
[5] The record does not indicate that Plaintiff was ever employed in this field.

4

Plaintiff was also treated at Buffalo Neurosurgery Group by neurosurgeon P. Jeffrey Lewis, M.D. ("Dr. Lewis") for spinal instability and coccyx pain, AR at 418, at Urban Family Practice, P.C. by physician's assistant Brendan Farnand ("PA Farnand"), for her back and neck pain, AR at 624-27, and at BestSelf Behavioral Health ("BestSelf") by nurse practitioner Sharon Yager ("NP Yager"), for mental health care medication management.  AR at 57.  On December 4, 2018, Plaintiff underwent posterior lumbar facet fusion at L4-L5 and L5-S1, a surgical procedure performed by Dr. Lewis at Mercy Hospital in Buffalo, to address Plaintiff's lumbar instability.  AR at 459-62, 505-06.

## DISCUSSION

**1.     Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more

5

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*.  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence.  *Id*.  "Congress has instructed . . . that the factual findings of the Secretary,[6] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

"Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'" *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 58-59 (2d Cir. 2013) (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in *Brault*). Indeed, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*."  *Id*. at 59 (italics in original).  Further, the threshold for substantial evidence "is not high . . . .  It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, __ U.S. __; 139 S.Ct. 1148, 1154 (2019) (internal citation and quotation marks omitted).

**2.   Disability Determination**

The definition of "disabled" is the same for purposes of receiving Social Security Disability Income ("SSDI") and SSI benefits.[7]  *Compare* 42 U.S.C. § 423(d) *with* 42

---

[6] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.
[7] The court notes Plaintiff did not apply for SSDI benefits.

U.S.C. § 1382c(a).  The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  If the claimant meets the criteria at any of the five steps, the inquiry ceases and the claimant is not eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied,

*id*., but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, the ALJ found Plaintiff has not engaged in substantial gainful activity since October 6, 2017, her disability benefits application date, AR at 12, and suffers from the severe impairments of degenerative disc disease of the lumbar spine, degenerative joint disease of the hips bilaterally, asthma, anxiety disorders and depression disorders, *id*., nonsevere impairments of hypothyroidism, obesity, and a ganglion cyst on her non-dominant, right wrist, *id*. at 12-13, that Plaintiff's asserted cervical strain did not meet the 12-month durational requirement to be considered severe, *id*. at 13, and that Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id*. at 13-15.  Despite her impairments, the ALJ found Plaintiff retains the RFC to perform sedentary work as defined in 20 C.F.R. § 416.967(a), except that Plaintiff can occasionally climb ramps and stairs, never climb ladders, ropes and scaffolds, occasionally balance, stoop, kneel, crouch and/or crawl, frequently rotate, flex, and extend her neck and frequently operate foot controls,

occasionally push and/or pull with the upper extremities bilaterally, frequently handle with the right upper extremity, cannot tolerate exposure to extreme cold, heat, wetness or humidity, cannot be exposed to excessive vibration, must avoid concentrated exposure to fumes, odors, dusts, gases, poorly ventilated areas and heights, can perform simple unskilled work, and can have only occasional interaction with the public, co-workers, and supervisors.[8]  *Id*. at 15-22.  Plaintiff has no PRW such that transferability of skills is not an issue, yet given Plaintiff's RFC, age, limited education, illiteracy in English and inability to communicate in English, Plaintiff can perform sedentary and unskilled jobs that exist in significant numbers in the national economy including as a polisher, document preparer, and touch-up screener.  *Id*. at 22-23.  Based on these findings, the ALJ determined that since the date of Plaintiff's disability benefits application, Plaintiff has not been disabled as defined under the Act.  *Id*. at 23.

Plaintiff does not contest the ALJ's findings with regard to the first three steps of the five-step analysis, but argues that at the fourth step, the ALJ erred by failing to properly evaluate the medical opinions of record, including those of Dr. Lewis, PA Farnard, and NP Yager.  Plaintiff's Memorandum at 15-21.  Defendant argues Plaintiff relies on the former so-called "treating physician rule" to support her arguments and that the ALJ's RFC determination is supported by substantial evidence in the record, Defendant's Memorandum at 5-7, including reasonable evaluations of the opinions of

---

[8] Although the ALJ considered Plaintiff's ganglion cyst to be a nonsevere impairment, in an abundance of caution, the ALJ limited Plaintiff to only frequent, as opposed to constant, handling with her non-dominant right upper extremity.  AR at 13.  Further, despite finding Plaintiff's asserted cervical pain, which Plaintiff attributes to a fall in March of 2019, did not meet the 12-month durational requirement to be considered severe, because the cervical pain was supported by an objective finding of muscle spasm, the ALJ limited Plaintiff to sedentary exertion with the additional limitations of pushing and/or pulling with the upper extremities bilaterally, and flexing and/or extending the neck to reduce aggravation or cause a recurrence of the claimed cervical strain.  *Id*.

Dr. Lewis, Defendant's Memorandum at 7-14, PA Farnard, *id*. at 14-15, and NP Yager, *id*. at 16-20.  In reply, Plaintiff denies relying on the treating physician rule, Plaintiff's Reply at 2-3, maintaining the ALJ erred by not explaining the failure to include in the RFC assessment several disability-supporting limitations found in the opinions of Dr. Lewis, PA Farnand, and NP Yager.  *Id*. at 3-6.

In the instant case, on November 2, 2019, neurosurgeon Dr. Lewis completed a Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination form for the New York State Officer of Temporary and Disability Assistance ("impairment questionnaire")("Dr. Lewis's opinion"), on which Dr. Lewis reported that he commenced treating Plaintiff on September 28, 2018 for low back pain and lumbar radiculopathy, and last examined Plaintiff on October 29, 2019.  AR at 807-09.  Plaintiff's prognosis was fair and treatment consisted of lumbar physical therapy with lumbar MRI and X-rays ordered.  *Id*.  Dr. Lewis checked boxes on the impairment questionnaire indicating the expected duration of Plaintiff's lumbar disorder was one to three months, with Plaintiff very limited in walking, lifting, carrying, pushing, pulling, bending, and climbing stairs or other climbing, moderately limited in standing and sitting, but not limited in seeing, hearing, speaking, or using her hands.  *Id*.  Although a post-surgery January 15, 2019 X-ray of Plaintiff's lumbar spine showed "satisfactory interval placement of facet cages at the L4-5 and L5-S1 disc levels" and "the remainder of examination is within normal limits," AR at 511, which Dr. Lewis construed as showing "very good position of all the interbody instrumentalities with no failure or migration," *id*. at 512-13, Plaintiff points to Dr. Lewis's findings at the October 29, 2019 examination that an April 2019 MRI scan, *i.e.*,

10

performed after Plaintiff's December 4, 2018 surgery, "showed a bulging disc at L4-5, retrolisthesis (slippage of vertebra backward along or underneath a disc), facet arthropathy and ligamentum flavum hypertrophy (abnormal thickening of ligaments running between the vertebral bodies of the spine) causing mild stenosis," as well as that Plaintiff "has difficulty standing," "is unable to ambulate without having severe pain," and "may not even be able to do housework, such as cleaning because of the amount of back pain she has."  Plaintiff's Memorandum at 18 (citing AR at 761-62).  The ALJ, however, properly accounted for these findings by limiting Plaintiff to a decreased range of sedentary work which, by definition, involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools," 20 C.F.R. § 404.1567(a),[9] and further restricting Plaintiff to never climbing ladders, ropes, or scaffolds, occasionally climbing ramps or stairs, occasionally balancing, stooping, kneeling, crouching, or crawling, frequently rotating, flexing and extending the neck, frequently operating foot controls, occasionally pushing or pulling with the upper extremities bilaterally, and frequently handling with the right upper extremity.[10]  AR at 20.

The ALJ's RFC assessment is also supported by the treatment notes of PA Farnand who treated Plaintiff at Urban Family Practice, P.C.  In particular, after physically examining Plaintiff on January 25, 2019, PA Farnand reported Plaintiff's spine showed strength of 5/5, and moderately limited ROM with pain, and that Plaintiff's lower

---

[9] Although a sedentary job may involve some walking and standing, "[j]obs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  *Id*.
[10] The court notes that the definition of sedentary work does not include any pushing or pulling; rather, pushing and pulling are work activities first included in work of "light" exertion.  *See* 20 C.F.R. § 404.1567(b).

11

extremities showed no instability bilaterally.  AR at 671.  PA Farnand's findings were similar upon physically examining Plaintiff on February 26, 2019, AR at 677, and March 29, 2019.  AR at 682.  An impairment questionnaire that PA Farnand completed on October 4, 2019 ("PA Fanard's opinion"), was similar to Dr. Lewis's opinion with PA Fanard reporting Plaintiff had back disc disease, anxiety/depression, and asthma, and checked boxes indicating Plaintiff was moderately limited in standing, lifting and carrying, very limited in pushing, pulling, bending, and climbing stairs and other climbing, but was not limited in sitting, seeing, hearing, speaking, or using her hands, or with regard to any mental functioning.  AR at 804-05.  PA Fanard commented that mild to moderate degenerative changes in Plaintiff's spine limited Plaintiff's ability to lift, push, pull, bend or climb but that otherwise there was no evidence of physical or mental restriction to work activities.  AR at 805.

      Although Dr. Lewis found Plaintiff "very limited" in her ability to walk,[11] AR at 808, "[s]edentary work . . . generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour work day." *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).  Significantly, at the administrative hearing, the VE testified that the jobs identified for Plaintiff, including polisher, document preparer, and touch-up screener, AR at 68, "are generally performed from a sitting position," such that "the issue is not about standing and the walking. . . ."  AR at 69-70.  An ALJ may rely on a vocational expert's testimony so long as such testimony is supported by substantial evidence in the record. *See McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) ("An ALJ may rely on a

---

[11] The court notes PA Fanard failed to check any box for indicating limitations to Plaintiff's ability to walk, AR at 805, in contrast to the same form containing Dr. Lewis's opinion on which the box indicating Plaintiff is "very limited" in her ability to walk is checked.  AR at 808.

vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumptions upon which the vocational expert based his opinion and [the assumptions] accurately reflect the limitations and capabilities of the claimant involved."). Accordingly, the ALJ's Decision that Plaintiff could perform such jobs is consistent with the opinions of Dr. Lewis and PA Fanard and is supported by substantial evidence in the record.

Moreover, the ALJ also relied on other substantial evidence in formulating Plaintiff's RFC including the opinions of treating physician Dr. Kucera, AR at 424-25, and consultative examiner Dr. Schwab, AR at 365-68. In particular, on an impairment questionnaire completed by Dr. Kucera on December 18, 2017 ("Dr. Kucera's opinion"), Dr. Kucera reported treating Plaintiff for asthma, depression/anger, and an ankle sprain. AR at 424. Dr. Kucera had last examined Plaintiff on December 6, 2017, *id*. at 425, and he checked boxes on the impairment questionnaire indicating Plaintiff was moderately limited in walking, standing, lifting, carrying, pushing, pulling, bending, and climbing stairs or other climbing, but was not limited with regard to sitting, seeing, hearing, speaking, or using her hands. *Id*. The ALJ found these opinions more consistent with light work, but ultimately considered them less persuasive because Plaintiff's post-surgery medical status supported the more restrictive limited range of sedentary work. AR at 20.

The ALJ also discounted several opinions that Plaintiff was capable of a greater RFC than that formulated by the ALJ. In particular, upon examining Plaintiff on February 2, 2018, Dr. Schwab observed Plaintiff's lumbar spine showed "full flexion, extension, later flexion bilaterally, and full rotary movement bilaterally," with positive

straight leg raising test bilaterally.  AR at 367.  Plaintiff also had full range of motion of upper and lower extremities bilaterally, and no evidence of subluxations, contractures, ankylosis or thickening.  *Id*.  Dr. Schwab diagnosed Plaintiff with asthma, backache, anxiety, and hypothyroidism, AR at 367, prognosis was stable, and opined that Plaintiff "has mild restrictions to bending, lifting, and carrying heavy objects.  She should avoid any respiratory irritants."  AR at 368.  The ALJ found Dr. Schwab's opinion to be only "partially persuasive" given it was issued prior to Plaintiff's spine surgery.  AR at 19-20.

The ALJ also gave little wight to the August 27, 2018 impairment questionnaire completed by Plaintiff's physical therapist, one Anita S. Joshi ("PT Joshi""), who checked boxes indicating Plaintiff's only limitations were moderate limitations to lifting, carrying, pushing, pulling, and bending, AR at 446, and that Plaintiff could work 20-30 hours per week, *id*., despite that fact that Plaintiff was about to undergo spinal surgery.  AR at 20.  Further, insofar as the ALJ may have erred in finding Plaintiff capable of occasionally pushing or pulling with her upper extremities bilaterally, AR at 16, such error is harmless because the definition of sedentary work does not include any pushing or pulling; rather, pushing and pulling are work activities first included in work of "light" exertion.  *See* 20 C.F.R. § 404.1567(b).  The ALJ, by limiting Plaintiff to a restricted range of sedentary work necessarily, in keeping with the regulations' definitions of "sedentary" and "light" work, also excluded any work that required pushing or pulling with the upper or lower extremities.  *See, cf*. 20 C.F.R. § 404.1567(b) ("If someone can do light work, we determine that he or she can also do sedentary work . . . .").

With regard to Plaintiff's mental functioning capacity, the ALJ also found the medical evidence of record established Plaintiff is capable of simple unskilled work, AR

14

at 16, *i.e.*, "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 404.1568(a).  In arriving at this conclusion, the ALJ found most persuasive the opinion of consultative psychologist Dr. Schaich who, upon examining Plaintiff on February 2, 2018, diagnosed Plaintiff with major depressive disorder, recurrent, moderate, panic disorder, agoraphobia, unspecified anxiety disorder, posttraumatic stress disorder, and cannabis use disorder in full remission.  AR at 20-21 (citing AR at 361).  Dr. Schaich found no evidence Plaintiff was limited in her ability to understand, remember, or apply simple or complex instructions, was mildly limited in her ability to use reason and judgment to make work-related decisions, mildly limited in her ability to adequately interact with supervisors, co-workers, and the public, sustain concentration and perform a task at a consistent pace, sustain an ordinary routine and regular attendance at work, regulate emotions, control behavior, and maintain well-being.  AR at 361.  Dr. Schaich attributed these limitations to depression, anxiety, trauma and agoraphobia, *id*., but opined the results of the examination did not appear "to be significant enough to interfere with the claimant's ability to function on a daily basis."  *Id*.  The ALJ considered that Plaintiff was responsive to mental health treatment at BestSelf, with which Plaintiff was not always compliant, AR at 21 (citing AR at 521-38, 827-848), and concluded Dr. Schaich's opinion, when considered in combination with Plaintiff's post assessment testimony, and Plaintiff's record of noncompliance with treatment, reasonably supported a limitation to simple work.  AR at 21.

      The ALJ considered and found partially persuasive Dr. Kucera's December 6, 2017 opinion that Plaintiff was moderately limited to understanding, remembering, and

carrying out instructions, maintaining attention/concentration, making simple decision, interacting appropriately with others, maintaining appropriate behavior without exhibiting behavior extremes, maintaining basic standards of personal hygiene and grooming, and appearing able to function in a work setting at a consistent pace.  AR at 21 (citing AR at 425).  The ALJ's found Plaintiff's post assessment treatment at BestSelf and non-compliance with such treatment more persuasive than Dr. Kucera's findings.  AR at 21.  With regard to NP Yager who treated Plaintiff at BestSelf, the ALJ considered an impairment questionnaire completed on September 9, 209 (AR at 800-01) ("NP Yager's opinion"), on which NP Yager checked boxes indicating Plaintiff was very limited in her ability to maintain socially appropriate behavior without exhibiting behavior extremes and appearing able to function in a work setting at a consistent pace, and moderately limited in interacting appropriately with others, but otherwise not limited in her mental functioning.  AR at 21 (citing AR at 800-01).  The ALJ found NP Yager's opinion consistent with the irritability Plaintiff demonstrated in her presentation and social interaction, which the ALJ accommodated by formulating the RFC to include a social limitation, and the ALJ accommodated the record's "mixed findings on cognition" by limiting Plaintiff to simple work.  *Id*. at 21.  *See McIntyre*, 758 F.3d at 152 (ALJ accounted for the plaintiff's non-exertional limitations in concentration, persistence, and pace by limited the plaintiff to simple, routine tasks, and unskilled work).

      Significantly, as further evidence that the ALJ's determination with regard to Plaintiff's mental impairment is supported by substantial evidence in the record is the ALJ's discounting of the March 2018 consultative opinion of State agency review consultant M. Marks, Ph.D. ("Dr. Marks"), who determined Plaintiff had depressive,

bipolar and related disorders, which posed only mild limitations to Plaintiff's ability to interact with others, concentrate, persist or maintain pace, and adapt or manage oneself, but had no limitation to Plaintiff's ability to understand, remember, or apply information.  AR at 21 (citing AR at 77).  According to the ALJ, the treatment notes of NP Yager and BestSelf support more than a mild limitation in cognitive functioning and Plaintiff's mood instability limits her social functioning, concentration, and ability to manage herself.  AR at 21.  For similar reasons, the ALJ found unpersuasive PA Farnand's opinion that Plaintiff had no mental functioning limitations.  AR at 21 (citing AR at 805).

Insofar as the ALJ relies on the reports of consultative examiners, including Dr. Schwab, AR at 365-68, and Dr. Schaich, AR at 358-62, the opinion of a consultative examiner may constitute substantial evidence provided the opinion is supported by and consistent with other evidence in the record.  *Camille v. Colvin*, 652 Fed.Appx. 25, 28 (2d Cir. 2016).  Likewise, the report of a consultative psychologist also may constitute substantial evidence.  *Petrie v. Astrue*, 412 Fed.Appx. 401, 405-06 (2d Cir. 2011).

To summarize, in the instant case, the evidence in the record establishes at most that it is susceptible to more than one rational interpretation, including the ALJ's Decision that Plaintiff is not disabled under the Act.  *See McIntyre*, 758 F.3d at 149 ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."); *Bonet ex rel. T.B.*, 523 Fed.Appx. at 58-59 (2d Cir. 2013) ("Under this 'very deferential standard of review [applicable to actions challenging an administrative decision on a disability benefits claim],' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'"

(quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).  Indeed, as noted, see Discussion, *supra*, at 6, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*." *Bonet*, 523 Fed.Appx. at 59 (quoting *Brault*, 683 F.3d at 448) (italics in original).  In the instant case, the ALJ's decision that Plaintiff could perform a limited range of sedentary work such that Plaintiff was not disabled is supported by substantial evidence in the record.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion (Dkt. 7) is DENIED; Defendant's Motion (Dkt. 8) is GRANTED.  The Clerk of Court is directed to close the file.
SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:    January 5, 2023
          Buffalo, New York